Winchester *v.* Heiskell.

T. P. WINCHESTER, Trustee, *et al. v.* J. B. HEIS-
KELL *et al.*

ATTORNEY'S LIEN FOR SERVICES. *Attaches when. Superior to subsequent encumbrances. Proper parties.* In December, 1876, a decree was rendered in the Supreme Court, declaring a lien upon certain lands, in favor of respondents, in this suit, for services rendered in defending and quieting the title to said lands. An order of reference to the clerk and master was had to ascertain the amount due. Pending the litigation in the original suit, T., respondent's client, executed a deed of trust to one W., trustee, to indemnify and save harmless certain sureties and indorsers of T. T., in November, 1875, was adjudged a bankrupt and W. was made assignee. W. was, by consent, made a party to the above mentioned decree, and in the proceeding before the clerk and master, appeared and cross-examined and introduced witnesses, etc. The land was sold, bid in by respondents, and the sale confirmed, W. acquiescing and afterward selling the equity of redemption, which expired by limitation. W. and the holders of the indebtedness under the deed of trust file this bill, attacking the title of respondents in the lands. T. and the sureties and indorsers,

Winchester *v.* Heiskell.

for whose indemnity the trust deed was executed, are insolvent and have never paid any of the debts for which they were liable.

*Held,* first, that the holders of the indebtedness secured by said trust deed can maintain a bill of this character.

Second, That, under the decisions at the time of the rendition of the decree, there could have been no question as to the existence of an attorney's lien for services rendered in defending a suit by which lands are sought to be recovered, although, under later decisions, such lien does not now exist.

Third, When such lien does exist, it relates back to the commencement of the service.

Fourth, Admitting the decree declaring a lien was erroneous, it was law for that case, and is not void.

Fifth, The beneficiaries under the trust deed, being subsequent encumbrancers, were not necessary parties to the proceedings before the clerk and master to enforce said lien.

Sixth, The assignee in bankruptcy was the only necessary party.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDowell, Ch.

Estes & Ellett for complainants.

H. Craft, Geo. Gantt, W. M. Smith, W. Y. C. Humes and Harris & Turley for defendants.

Cooke, J., delivered the opinion of the court.

On June 6, 1866, one D. H. Townsend recovered a judgment in the circuit court of Shelby county against one W. E. Jones, for the sum of $1,188.25, upon which execution was issued and levied upon the tract of land now in controversy, containing about six hundred and forty acres, and then of the estimated value of about from $30,000 to $50,000.

On September 12, 1866, said land was sold by the

sheriff under said execution and levy, and bid off by said Townsend at the price of about $1,242. Jones died before the expiration of the two years allowed by law for the redemption of said land, and the time for redemption having expired, and said land not having been redeemed, Townsend took a sheriff's deed to himself therefor, on January —, 1869. In the meantime, dower in said land, comprising about three hundred acres of this tract and including the mansion house, etc., had been assigned to Mrs. Annie L. Jones, as widow of said W. E. Jones, who was in possession of the same, and said widow and the children and heirs-at-law of said Jones also had some tenants in actual possession of some small portions of said land outside of the boundaries of said dower. Townsend took possession of all the residue of said lands outside of said widow's dower, and claimed to hold the same under his sheriff's deed. Thereupon, on February 16, 1869, said Annie L. Jones, widow, and the children and heirs-at-law of said W. E. Jones, deceased, filed their bill in the chancery court against said Townsend, attacking the validity of said sheriff's deed on various grounds, and seeking to have the same removed as a cloud upon their title, to recover the possession of the portions of said land so taken possession of by said Townsend, and also to be permitted to redeem the land by paying the money and interest bid upon the same by said Townsend at said sale. To defend this suit, Townsend either had, in anticipation of its being brought, or did, immediately upon its institution, employ Messrs. Heiskell, Scott & Heiskell, a firm of

lawyers then practicing in Memphis, to defend said suit and protect his title to said tract of land, and on the next day after said bill was filed, viz., on February 17, 1869, by said attorneys, filed his answer and made the same a cross-bill, by which he denied all the allegations of said bill by which his sheriff's deed was attacked, setting up the same and the steps taken in acquiring it, and averred that the same vested an indefeasible title in him, subject alone to said widow's right of dower; averring further that said complainants, by their tenants, had actual possession of certain portions of said land outside of the boundaries of the widow's dower, upon which they had built "shanties;" that said widow and heirs-at-law of said W. E. Jones were committing waste upon said lands inside of the boundaries of said dower, and they and their said tenants were committing waste outside of the same, by cutting timber, etc., and seeking to enjoin said widow, heirs and tenants, who were made parties respondents to said cross-bill, from committing any further waste upon any portion of said lands, or taking any further possession, or making enclosures upon the same, and to have an account of the waste actually committed, and a decree against said parties for such sum as would compensate him for the damages to the land and the value of the timber taken by them, and that, by a decree of the court, his title to said tract of land be declared and his possession quieted.

This cause was severely litigated in the chancery court until in 1872, when relief was decreed the complainants in the original bill, permitting them to

redeem said land, and they having brought into court the amount of the redemption money, and Townsend having refused to receive it, the complainants had a decree investing them with the title to said land, and awarding them a writ of possession, and dismissing Townsend's cross-bill, and he appealed to this court. Pending said appeal in this court, to-wit, on June 18, 1875, Townsend executed a deed of trust to George W. Winchester as trustee, by which, among other things, he conveyed the tract of land in litigation to him to secure complainants, May & Staley, as his endorsers upon certain specified indebtedness to the other parties, as specified in said trust deed.

On November 28, 1875, Townsend filed his petition in bankruptcy and was duly declared a bankrupt, and complainant, T. P. Winchester, was duly appointed his assignee in bankruptcy. On December 8, 1876, said cause was tried in this court, and a decree rendered by which the chancellor's decree was reversed and the complainants were adjudged not entitled to any relief, but relief was granted upon Townsend's cross-bill, as follows: "It appearing that the said Townsend is entitled to the relief prayed in his cross-bill, to have his title declared and quieted, it is therefore adjudged that the said Townsend has a good title to the said tract of land and premises, by virtue of his said purchase and sheriff's deed, in fee simple." Said injunction was made perpetual, and the decree then proceeds as follows: "And it being suggested to the court that the title of said Townsend has been assigned to Thos. P. Winchester, his assignee in bank-

ruptcy, it is, with the consent of said Townsend by his counsel, ordered that the said Winchester be made a party to this decree; and by consent this cause is remanded to the chancery court of Shelby county to take order in relation to the fund paid in, and to take an account and make a report of the reasonable counsel fees of counsel Heiskell, Scott & Heiskell, for which a lien is hereby declared on the premises in controversy, the said Winchester asking that said account be taken below." Townsend, pending this litigation and before his bankruptcy, had purchased said widow's dower interest in this land. The cause was remanded to the chancery court and an account taken upon very full proof as to the value of said services rendered by said counsel in the case, said Winchester, the assignee in bankruptcy of said Townsend, appearing and cross-examining the witnesses introduced by said attorneys and introducing countervailing testimony. Townsend himself, while he knew about these proceedings, made no appearance, and even refused to testify in regard to said fees upon the application of his assignee in bankruptcy.

The master reported upon said reference, that $5,500 was reasonable compensation to said solicitors for their services, and that they had been paid $200, balance due $5,300, which report, being unexcepted to, was confirmed and a decree rendered in favor of said attorneys for said amount, the same being decreed as a lien upon said land, which was decreed to be sold for the satisfaction of the same, subject to the equity of redemption. Said land was sold, in obedience to

said decree, on October 13, 1877, and purchased by said solicitors at the price of $5,300, the amount of their said decree. The master's report of said sale being unexcepted to was confirmed, and the title divested out of the said Townsend, or said Winchester, assignee in bankruptcy, and all parties, both complainants and respondents in said cause, and vested in said Heiskell, Scott & Heiskell; said assignee in bankruptcy acquiesced in said proceedings and sale, and afterward sold the equity of redemption, which was purchased by the complainant, the DeSoto Insurance Company. All parties permitted the time for redemption to expire without any attempt to redeem said land.

George W. Winchester, the trustee in the before mentioned deed of trust executed by Townsend, on June 18, 1875, having died without any attempt to execute said trust, T. P. Winchester was, by a decree of the chancery court, appointed trustee in his stead, in 1879, who proceeded to sell all the other property conveyed in said trust deed, and on February 12, 1880, he, together with the beneficiaries mentioned in said deed of trust, filed this bill against said Heiskell, Scott & Heiskell, seeking to attack the title thus acquired by them to said land by virtue of said proceedings and decree, and to have the same declared void and removed as a cloud upon the title of said trustees and beneficiaries under said deed of trust, upon the grounds, as alleged, that said services were rendered in a defensive suit, and hence no lien existed in favor of solicitors. Second, that neither said Townsend or

said complainants were made parties in any appropriate way to said proceedings, nor were there any appropriate proceedings under which said inquiry could be had; and third, that so far as said assignee in bankruptcy was concerned, his was a contingent interest under the trust deed, and this was the only right said assignee did or could represent in said suit, and that he did not even represent the equity of redemption in said property.

The bill also alleges that there was a special contract existing between said solicitors and Townsend by which they had agreed to attend to said litigation for $1,000. The answer denies all the allegations of the bill upon which relief is sought specifically. The condition of the deed of trust is as follows: "Whereas, Ben May is bound for me as endorser upon the following described notes and bills, to-wit" (setting them out); "and, whereas, I am also indebted to said Ben May in the further sum of $526.41 by note held by him," etc. "And, whereas, also, W. S. Staley became bound for me as my surety on an appeal bond," etc., (describing it, the amount being about $8,000), "and being desirous to indemnify and save harmless the said May and Staley from the liability thus incurred as surety and endorser, now, if said parties shall be constrained to pay off and discharge any of these liabilities, and I shall fail to reimburse the amount thus paid within a period of two years from the date of these presents, then I authorize said trustee to sell," etc., "to raise money adequate for the payment and discharge of such liabilities. The trustee will apply

the proceeds of this sale, first, to the payment of the costs of execution of this trust; second, to the payment of these liabilities, or such as have accrued and fallen upon said endorser and surety, it being intended to place them both on an equal footing; and lastly, pay the remainder, if any, to me," etc.

Said Townsend and said surety and endorser, Staley and May, are all utterly insolvent, and neither of them have ever paid anything upon said indebtedness, and it is insisted by the respondents that this is a mere indemnity mortgage, and as said May and Staley have not paid any portion of said indebtedness, and could not enforce the execution of the same for their own benefit, and consequently the holders of said indebtedness upon which they are respectively endorser and surety can have no better right, and hence neither they nor the trustee can enforce the same for their benefit, that the condition of said mortgage has not been broken, and consequently this bill can not be maintained.

Without entering into any discussion of this question, we are of opinion, as well from the terms of the mortgage itself, above cited, as the fact that the mortgagor, Townsend, is insolvent, that the bill is maintainable by complainants to the mortgaged property, all else out of the way, to the satisfaction of these debts: 3 Heis., 525; 5 Cold., 392; Brandt on Suretyship, 383, *et seq.*

The next question presented is as to the lien of respondents and its superiority over that of the deed of trust in question. Under our decisions, as they existed up to that time, there could have been no

Winchester *v.* Heiskell.

question as to the existence of the attorney's lien: *Hunt* v. *McClanahan*, 1 Heis., 503; *Perkins* v. *Perkins*, 5 Heis., 95; 5 Heis., 694; 2 Baxt., 218; 12 Heis., 472; 4 Baxt., 93.

It is now, however, settled that no attorney's lien exists for services rendered merely in defending a suit by which lands are sought to be recovered from the client: *Garner* v. *Garner*, 1 Lea, 30; *Stanford* v. *Andrews*, 12 Heis., 664; *Sharp* v. *Fields*, 5 Lea, 326.

It is also well established that where the lien exists it relates to the commencement of the service: *Garner* v. *Garner*, *supra*, 1 Heis., 506; 3 Lea, 250.

It is insisted, however, for the complainants, that the suit in which the lien was declared by this court was a purely defensive suit, and hence no lien existed, and the adjudication of the same by this court was *coram non judice* and void. This question was raised in the case of *Sharp* v. *Fields*, 5 Lea, 329, where it was insisted that a writ of error could not be maintained for that reason; but it was held that the party was entitled to prosecute the writ to reverse the judgment declaring the lien. It was said, however, that this would be so whether the judgment was void or merely erroneous, and the question was not there decided. We are of opinion that the adjudication of the existence of the lien by this court, under the state of pleadings in that case, was not void, even if it were conceded to have been erroneous. But there was active relief in regard to the title to the land in question sought and obtained by the cross-bill and decree thereon, as we have above seen, and if it were

granted that the decree declaring the lien was erroneous, it was at all events the law of that case. But it might be held, even under the present state of our decisions, to have been correctly adjudged. The lien of the respondents must consequently be now considered as valid and subsisting, and related to the date of filing the answer and cross-bill, and was consequently superior to that created by the mortgage in question, which was executed several years afterward and pending the litigation, which was consequently notice to the complainants, and they were bound by the adjudications in that case.

The beneficiaries in said mortgage, being subsequent encumbrancers, were not necessary parties to the proceeding to enforce said prior lien: *Brown* v. *Mercer*, 10 Hum., 359; *Mims* v. *Mims*, 1 Hum., 425; 1 Daniel Chan. Plead. and Practice, 214.

Townsend having become bankrupt pending the suit in which the lien was declared, he was not a necessary or proper party to the proceeding to enforce it, and Winchester, the assignee, was the only necessary party: 1 Daniel Chan. Plead. and Practice, 215, and authorities there cited. And he having appeared, both in this court and in the court below, and assented to the order remanding the cause for the purpose of ascertaining the amount of the fee and its enforcement in said chancery court, and having voluntarily become a party to said proceedings and litigated the same in said court and acquiesced in the decision, can not now be heard to question them. But if this were not so, the assignee, being the only necessary party to

said proceeding, is the only one who could complain, which he has not done, but as we have before seen, acquiesced and sold the equity of redemption. While, as we have seen, the beneficiaries in the deed of trust were not necessary parties or entitled to any notice of said proceedings, yet the proof abundantly shows that in point of fact they had actual notice of them, and might, if they had chosen, become parties to the same, which they did not see proper to do. The record fully establishes that these respondents not only did not desire anything more than their just compensation for the services which they had rendered, but sought the principal beneficiaries in said deed of trust and afforded them every facility, and were anxious that they should protect their interests by taking said property, subject to their lien, which they declined to do. They were present at the sale, but refused to bid upon the property.

It is alleged by the bill that the respondents had a special contract with Townsend, by which they had agreed to defend the title to the land for $1,000. This is positively denied, and the proof, in our judgment, fails to establish it. W. L. Scott was the partner of the firm with whom the contract of employment was made, whatever it was. He had procured the judgment for Townsend under which the land was sold; had superintended the proceedings under which the same was sold; had advised the course to be pursued; had prepared the sheriff's deed; had advised as to the possession, and was perfectly familiar with every step that was taken in the matter. And

he testified that he was engaged by Townsend soon after the sale, in the event the land should not be redeemed, to see to the perfecting his title and to defend the same in case of litigation. He further testifies that no such contract, nor any specific contract, was made with him, and that he never agreed to any such terms. Townsend and two other witnesses, who appear to have been his clerks, Spicer and Staley, have testified in relation to the matter. Townsend's testimony is that he proposed to Judge Scott that he would give him $1,000 if he successfully defended the title to the land, and that Scott made no reply, but did attend to the suit. One of the clerks, who professes to have been present on the same occasion, testifies that Townsend proposed to Scott to give him a fee of $500 to defend said suit, and a further conditional fee of $500 if he succeeded in protecting the title to the land, and that Scott agreed to the proposition and accepted it in terms, while the other testifies that Townsend offered him $1,000, conditioned that he defended the title successfully, and that Scott agreed to accept the proposition. One of said witnesses says this was before and the other that it was after the suit had been brought.

The circumstances all tend to corroborate the testimony of Judge Scott. The property as we have seen, was then estimated to be worth in the neighborhood of from $30,000 to $50,000. The title was questionable and the suit of doubtful issue. It is scarcely probable that a firm of able lawyers would agree to undertake an almost purely speculative suit, involving

that amount, for so small a proportion of the amount involved, conditioned upon the successful result of the same, while the client only risked the amount of about $1,242, and all above that sum would be a clear gain to him.

The answer and cross-bill was filed on the next day after the filing of the bill. It is carefully and elaborately drawn, and is such a presentation of the matter of defense and grounds of relief sought by the cross-bill as no attorney could investigate and prepare in one day, unless he possessed an intimate knowledge of them in advance, and sustains the statement of Judge Scott, that he had been spoken to to defend the title in case of litigation, and had been preparing well for it. Although Townsend testifies that he made a conditional contract with Scott to pay $1,000 in the event of the successful termination of the litigation, yet he further testifies that he paid $590 of said fee before it was terminated. On the books of Heiskell, Scott & Heiskell, there appears a charge made by Scott of $500 as a retainer in said cause, which was entered about six months after the bill was filed, and on the same day a credit upon said books to Townsend of $50 on account of said fee. This is the only charge in relation to said litigation upon said books, and which we think indicates that no specific amount had been fixed upon at that time as the fee to be charged in said case, else it would have been entered. Both of the other partners, J. B. and C. W. Heiskell, testify that, although they often conferred together with Judge Scott in relation to the amount

of fees charged, that he never intimated to either of them that he agreed upon any amount to be charged in said cause, and all of them testify that they often spoke among themselves as to the amount of the fee they would be entitled to charge in that case in the event they were successful, and that they expected to charge a large fee in that event. And it certainly was a case that justified such expectations.

It is also shown by the testimony of both Scott and Townsend (who was embarrassed with debts, and the respondents it seems became somewhat anxious to get security for their fee), that pending the litigation, Scott drew up a mortgage for $4,000 and sent to Townsend to sign, by way of securing the fee in said cause, which both testify he declined to do because he considered the charge too high, but Scott testifies positively that he did not, and Townsend does not pretend that he did, at that time, claim that he had made any special contract as to the amount to be charged, which he would almost certainly have done if such had been the case; nor does he pretend that he ever did, in presence either of Scott or of either of the partners, at any other time, claim that a fee had been agreed upon. It is also shown by the testimony of the assignee in bankruptcy, that while the litigation in the chancery court to ascertain the fee was in progress, he went to Townsend and requested him to testify as a witness in regard to it, which he declined to do, as he stated, for reasons satisfactory to himself. It is a legitimate inference, that if he had, at that time, alleged that he had a special con-

tract with the respondents for $1,000 conditional fee, said assignee would have had him subpœnaed and compelled him to testify to that fact. These are some of the circumstances which we think disparage the testimony of said witnesses, and sustain that of Judge Scott as the true statement of the transaction. The amount of the fee, we think, rested upon a *quantum meruit*, and was properly ascertained and the lien properly enforced. The complainants stood by and saw the time for redemption expire without any effort to discharge said prior lien and appropriate the residue of the property, which they might have done. The result is, the title of the respondents to the land in controversy has become absolute and can not be disturbed. The chancellor came to the same conclusion and dismissed the bill. The Referees have reported that the decree should be reversed. The exceptions to the report must be sustained and the chancellor's decree dismissing the bill affirmed with costs.

FREEMAN, J., dissents.

### PETITION TO REHEAR.

Upon petition to rehear, COOKE, J., said:

This cause was determined at the last term of this court, and a petition to rehear held over under advisement. The petition to rehear presents no question that was not fully considered on the former hearing, and upon a careful reconsideration of the

questions then decided, a majority of the court are satisfied that the original opinion was correct, and adhere to it.

The petition to rehear will therefore be dismissed.

FREEMAN J., dissents.